MORRIS *et al. v.* SMITH.

(Division A. Jan. 9, 1939. Suggestion of Error Overruled Feb. 20, 1939.)

[185 So. 548. No. 33365.]

Hannah & Simrall, of Hattiesburg, for appellant.

E. J. Currie, of Hattiesburg, for appellee.

Argued orally by **T. C. Hannah**, for appellant, and **E. J. Currie**, for appellee.

**McGowen, J.**, delivered the opinion of the Court.

In February, 1936, Luther A. Smith, appellee, filed his bill in the nature of discovery against Mrs. L. M. Daughdrill, Lyda E. Daughdrill, Dorothy Daughdrill Fields, Harry Fields, W. J. Morris, Frank Gains, and R. R. Guice, in which he alleged that by virtue of a certain written contract exhibited with the bill, he had sold to Mrs. L. M. Daughdrill and her husband, H. C. Daughdrill, 5800 building blocks, or brick tile building material, and had delivered same upon the premises described in the written contract of the Daughdrills for 13½c per block, and one-half price for the broken tile. Said written contract was promptly recorded in the land deed record books of the county.

The bill further charged that between April 2, 1932, and June 4, 1932, L. M. and H. C. Daughdrill inspected, approved, and accepted 5800 of said brick tile building blocks, and that he complied with his contract by delivering said 5800 brick tile building blocks upon the premises of the Daughdrills, and that the Daughdrills breached said contract in that they failed and refused to execute and deliver their promissory notes, evidencing the purchase price thereof, and failed to construct a building, as provided by the contract, and that they failed to pay the purchase price. After the execution and delivery of the contract, and after the inspection, approval, acceptance, and delivery of the building blocks, H. C. Daugh-

drill died, leaving as his sole heir, Mrs. L. M. Daughdrill, his wife.

The bill further charged on information and belief that after the execution and delivery of the written contract, and a recordation thereof, and after the delivery of the personal property upon the premises described in the contract, and after the breach of the terms thereof, and after the abandonment thereof by Mrs. L. M. Daughdrill, that about January 26, 1934, Mrs. Daughdrill conveyed the aforesaid premises to Lyda E. Daughdrill, by deed recorded in the land deed records, and delivered the possession of the aforesaid personal property to the said Lyda E. Daughdrill with full notice of the rights and interests of the complainant in the personal property.

The bill alleged that subsequently Lyda E. Daughdrill likewise conveyed the premises to Dorothy Daughdrill Fields. The bill charged then that the personal property was delivered by Dorothy Fields to her husband, Harry Fields. It then charged that these building blocks in quantities unknown were sold by Harry Fields to W. J. Morris, Frank Gains, and R. R. Guice, and that each of the several parties bought with notice of his rights and interests in the building blocks. He asserted that under Section 2239, Code of 1930, he had a lien for the purchase money on the blocks and that the several defendants had notice that the purchase money had not been paid and asserted a purchase money lien upon the number of blocks bought by each of the defendants from Harry Fields, and that the value thereof was 13½c per block, and that he was entitled to enforce a lien as against each of the purchasers of the blocks from Harry Fields to the extent of their purchases.

He then further alleged that if the court should hold upon the facts, and the construction of the contract, that he had never parted with the title to the blocks in question, then, in that event, he was entitled to recover as for a conversion from the several defendants for the value of the blocks converted by them. Questions were then pro-

pounded to the several defendants as to the number of blocks, the extent of interest claimed by each of them in the blocks, and by what right Fields sold the blocks.

The bill prayed for relief in the alternative, that in the event the court held that he had parted with the title to the blocks to L. M. and H. C. Daughdrill, then he was entitled to enforce a purchase money lien against each of the parties who had converted the blocks with notice, both actual and constructive, of his rights, or, in the event the court held that he had parted with the title to L. M. and H. C. Daugdrill, then that he be allowed to recover from each of the parties for the value of the blocks alleged to have been converted by them.

The answer of the appellant, Morris, in effect, admitted the allegations of the bill as to the written contract, and as to the delivery on the premises described in the contract of 5800 blocks, and specifically admitted that the Daughdrills had inspected and accepted the blocks and admitted the several conveyances as alleged in the bill. The bill and answer show that H. C. Daughdrill had died prior to the time Mrs. L. M. Daughdrill executed the deed to Lyda E. Daughdrill. Morris denied that the purchase money had not been paid, or that the Daughdrills had breached their contract with Smith. They denied any notice, actual or constructive. The separate answers of Guice and Gains were practically to the same effect as the answer of Morris. Mrs. Dorothy Fields and her husband answered, the main feature of their answer being that they denied that L. M. and H. C. Daughdrill had inspected, approved, and accepted, the blocks in controversy, denied that Smith had complied with his contract by the delivery of the blocks, and denied that the L. M. and H. C. Daughdrills had breached their contract, that they averred that the Daughdrills never inspected, or accepted the blocks, and alleged that the blocks tendered were utterly and wholly unfit for the purpose for which they had agreed to purchase them. They, as well as all other defendants, denied that the contract they had re-

corded constituted any notice to them, or to any of them, of the claim of Smith.

The county court decreed that the title to the blocks in controversy had never passed from Smith to L. M. and H. C. Daughdrill, and there was no controversy as to the number of blocks received by each of the defendants named in the bill their purchase from Harry Fields, and rendered judgment against each of the parties for the number of the blocks and the value thereof as testified to by Smith. From that decree all of the defendants prosecuted an appeal to the circuit court, where the case was affirmed, and a decree entered by the circuit court holding liability upon the principal, appellants, and the sureties on the appeal bond, from which decree appeal is prosecuted here by Morris.

The evidence of the appellee, Smith, was to the effect that H. C. Daughdrill, in his lifetime, and Mrs. L. M. Daughdrill never executed the notes provided for in the written contract in payment for the blocks, and that they never constructed the building. They never paid for the blocks. He said that they had abandoned the contract, resting on that bare statement. Presumably he meant by this that they had never executed the notes or constructed the building provided for in the contract. All of his evidence was objected to on the ground that he was incompetent as a witness against the estate of the deceased, H. C. Daughdrill. He testified that the blocks in controversy were the blocks which he had sold and delivered from his plant, on the land described as being owned by the Daughdrills, to them. He never testified to any conversation between him and L. M. and H. C. Daughdrill. He never testified that he exercised any acts of ownership or notified any of the several grantees, which we have named, or any of the purchasers that he claimed title to the blocks until after they were sold to the several parties.

Fields testified that the blocks were scattered over the land to the extent that he could not rent it to a tenant,

and that there were other blocks than the tile blocks claimed by Smith, and that some kind of wall had been attempted to be constructed by the use of some of the blocks. He further testified that he "signified" to the purchasers of the blocks from him that his wife was the owner thereof, and that he and his wife had used the proceeds of the sale of the blocks for family purposes. When examined by appellee as to his averment that the Daughdrills had abandoned the contract, he admitted that he had no personal knowledge as to that allegation, but that it had been his understanding in the family. He stated that Smith had never said anything to him about the blocks until after these several sales, the one by Harry Fields to Morris being about November 26, 1935.

The decree of the court below that the title had never passed from Smith, the appellee, to H. C. Daughdrill and wife, can be based only upon the theory that the failure of the Daughdrills to execute the two notes provided for in the written contract in favor of Smith, payable at different dates, and the failure to erect a building constituted an abandonment of the contract. We cannot assent to this conclusion. Smith, in his bill, alleged under oath of his own knowledge that the blocks in question were inspected, received, and accepted by the two Daughdrills and delivered into their possession at the place, and upon the land where the contract specified they should be delivered, and there remained without any affirmative action by word or deed from June 4, 1932, until subsequent to November 26, 1935, a period of more than three years. This was admitted by the answer of Morris, and, in our opinion, a complete delivery having been effected by the seller, the buyer on account of the conduct of Smith became invested with the title. By his own act he invested H. C. Daughdrill and wife with every indicia of ownership, of which the personal property in question was susceptible. For his own convenience, and to save expense, he allowed the blocks to remain in their possession and in the possession of the subsequent grantees without ever,

during a period of more than three years, asserting any right or claim to the blocks. He allowed the contract, which perhaps was intended to establish a materialman's lien, or a purchase money lien, to remain uncancelled on the record. Where a contract provides that on delivery of personal property after the buyer obtains possession, that cash is to be paid therefor, or that notes are to be executed therefor, and where the buyer is invested with all the indicia of ownership it becomes the duty of the seller, if he desires to retain the title to the property, to assert promptly his right to reclaim the property; an unreasonable delay on his part in so doing will constitute a waiver of his right to reclaim. This rule which is wholesome and salutary seems to be generally recognized by the courts of this country. The rule further is that an unreasonable delay on his part in asserting his claim of title will constitute a waiver of his right to reclaim, and certainly in this case more than three years was an unreasonable delay. In fact in most of the cases we have had occasion to examine, a very short time is regarded as unreasonable. See R. C. L., p. 1388, sec. 211.

Of course, the seller has the right to demand that the terms of the sale be complied with by the buyer. He had a right to demand that the notes be promptly executed and could have retained title to the property if he had acted in accordance with that view and pursued that course, but he chose his course. He had the right to let the title pass to the buyers and retain his written contract as evidence that he had a purchase money lien in the amount thereof, or he had a right promptly to demand that the notes be executed and in some manner demonstrate that he reclaimed the property as his own. On his view he either had a purchase money lien, or he had the title to the property. He could not hold on to both. He must surrender one or the other. At the time of the delivery of this property, he had the right to elect to promptly reclaim the property as his own. On a failure so to do, the rule is that he has forfeited his right now

to claim title to the property. He allowed them and their successors and grantees, so far as everyone in the world could say, to retain possession and abandoned ownership of the personal property. If this contract had stipulated that cash was to be paid promptly on delivery of the property, then he must immediately act if he desired to retain title to the goods. On the other hand, a reasonable time will be allowed where notes are to be executed. The situation of the parties in this case, as disclosed by this record, shows that he did not exercise his right to claim the title to the property within a reasonable time. He must exercise such right as promptly as the situation of the parties and the circumstances of the case will allow.

The decree of the court below vesting the title of this property in the appellee, and allowing him to recover for the conversion of the property was erroneous.

It is clear that there was no inconsistency in the alternative prayer of the bill, and, as the case now stands, there can be no complication in the pleadings and as to the appellant, Morris, and appellee, Smith, the issue is as to whether the lien for a purchase money can be enforced as against Morris in favor of Smith. And, in view of the fact that the evidence was not addressed to this issue, we think there should be a trial thereof in the court below as the circuit court should have reversed the decree of the county court.

The interesting questions as to whether the description of the property in the written contract and the evidence in support of it is sufficient to identify it, and the question of whether or not appellee is a competent witness against the estate of H. C. Daughdrill, his wife still being alive, is one that has not been decided by this Court, and we prefer to pretermit a discussion thereof until the case is fully presented. The record discloses, in our opinion, that there are living witnesses who can be offered in person or by deposition as to the facts of this case on the question of a lien for the purchase money.

Obviously it does not follow that because the Fields did not assert title, that therefore Smith had title. The conclusion we have reached is that the title to this personal property either passed with the several conveyances or it remains in Mrs. L. M. Daughdrill, and the estate of H. C. Daughdrill, who were coparties to the contract with Smith.

The case will be remanded to be proceeded with in accordance with this opinion.

Reversed and remanded.